Nash, J.
 

 The foundation of the plaintiff’s bill is, that, Joseph Kincaid being in embarrassed circumstances, a constable levied an execution on the negro Lucy, and it was agreed between him and the defendant, Hall, that he, Hall, should purchase said negro, and permit the said Kincaid to redeem her, and the
 
 gravaman
 
 is, that, in violation of that contract, he has conveyed the negro Lucy and all her increase to the widow of Kincaid, the defendant Eleanor, for her life, and after her death, the negro Simon to Sarah Wells Kincaid, and Betty, the child, to Lucinda Kincaid, the other two defendants, and, after the death of the said Eleanor, the remainder of the negroes to be sold and divided among all her children. The defendant, Hall, positively denies that he ever made any such agreement with Joseph Kincaid, either before or after the sale; states that he purchased the negro Lucy with his own money, at a full price, and for his own purposes; that it would have been idle to have made any such contract, for he knew Kincaid was very much embarrassed; that he then owed at least $1000 more than he could ever pay, which is still due and unpaid, and that, seeing the embarrassed situation of the family, he told Mrs. Eleanor Kincaid his intention of securing to her whatever might remain after repaying himself; that this promise was entirely gratuitous, but that he had performed it. The plaintiff has entirely failed to sustain his charge; no evidence has been adduced by him to prove the existence of any contract or argreement, or even understanding, between his intestate and Hall, that the former should have the right to redeem.
 

 He alleges the long and continued possession of the intestate, as proof of it. The answer of Hall fully and expressly denies it, and the circumstances proved in the case support the answer, and sufficiently explain the possession. Hall did not purchase with any view to his own profit, but with the intention to aid the sister of his wife and her children, and he
 
 *419
 
 has fully and, we think, honestly, done so. The plaintiff ther alleges, that, about two years after the constable’s sale, Kincaid and Hall met at the house of the latter, when they had a full settlement, and Hall surrendered up the bill of sale for Lucy, to Kincaid. This part of the plaintiff’s case rests upon the testimony of Joseph Linster, and his wife. The character of the former has been assailed in such a manner, as greatly to weaken the force of his testimony, and to incline the Court to lay it aside, and the testimony itself is suspicious. He appesrs, from his own account and from his connection with the parties, to have fully known all the circumstances attending the transaction ; yet, he gives us no particulars, does not tell us what was settled, except that it was about Lucy, and in the presence of Newberry Hall, who, he says, made the statement, and that Hall surrendered up the constable’s deed to Kincaid. The wife of Linster makes the same statement, as to the surrender of the deed.
 

 If the character of Linster was unimpeached, corroborated as his statement, on this part of the transaction, is, by that of his Wife, we should be compelled to believe that such a settlement had taken place, and that the bill of sale had been surrendered by Hall. But the latter denies that any such settlement ever did take place, or that Kincaid has ever repaid him any portion of what he paid for Lucy, and, with respect to the settlement, Newberry Hall explicitly supports the answer. But, if we were satisfied that the fact was as testified by Linster and his wife, as to the surrender of the bill of sale, we could not decree upon that fact, that the slaves should be surrendered; for that fact, is inconsistent with a trust in Hall, either for Kincaid or for his wife and family. But, according
 
 to
 
 the statement of Hall,and there is no evidence injjthe case to dis-prove it, he purchased Lucy and York absolutely for himself, and his promise to secure to Mrs. Kincaid what might remain after satisfying his own claim, was a promise without a consideration, void in Equity, as well as at law, when the action of the former is invoked to carry it into execution. The money by which his claim was satisfied, if satisfied at all, was
 
 *420
 
 raised by the sale of York; for it is not pretended by Linster any money was paid by Kincaid at the time of the alleged settlement; it was therefore the money of Hall.
 

 The most tha-t could be made of the surrender of the bill of sale is, that it was a parol gift of the negro Lucy to the intestate since the act of 1811, and therefore void, by the act of the General Assembly.
 

 We are of opinion, therefore, upon the point of fact, that the defendant Hall,'did' not' purchase upon any trust for Joseph Kincaid.
 

 Upon the argument of this case, we were at first in some doubt, whether, under the deed from Joseph Hall to Ashbell Smith, the interest was conveyed to her separate use, or vested immediately in her husband. It was, therefore, necessary to inquire, whether the conveyance Was of such a character, as to exclude her husband". At the common law a husband is burthened with the debts of his wife, and is entitled, absolutely or partially, according to circumstances, to her property; but, in Equity, a gift may be made to a
 
 feme
 
 covert, so as to shut out and exclude the husband’s interference or interest in it, provided the’intention be clearly expressed. This intention, however, must be clearly and' unequivocally expressed; and the reason is,that, as the husband is bound to maintain his wife and bear the burthen of her incumbrances, he has
 
 prima facie
 
 a right to her property. Lewin on
 
 Trusts, 150.
 
 There is no technical language, in which this intention must be expressed, to render it efficacious. If the meaning be certain, that the wife shall have the prdperiy,' exclusive of her husband, a Court of Equity will execute the intention,
 
 Darley
 
 v.
 
 Darley,
 
 3 Atk. 399.
 
 Staunton
 
 v.
 
 Hall,
 
 2 R. & M. 180. Various expressions have been considered by the Court sufficient to deprive the husband of his marital right; such as “for her sole and separate use,”
 
 Parker
 
 v.
 
 Brooke,
 
 9 Ves. 583 — “for her sole irse,”
 
 Adamson
 
 v.
 
 Armitage,
 
 19 Ves. — or “for her livelihood,”
 
 Darley
 
 v.
 
 Darley,
 
 3 Atk. 399 — or “that she may receive and enjoy the profits,”
 
 Tyrrell
 
 v.
 
 Hope,
 
 2 Atk. 258. In Lewin on Trusts, page 150, the author has bol
 
 *421
 
 lected together various other cases, in which the Courts have held other words to be sufficient, as they were clearly inconsistent with the notion, that the husband had any right to interfere with the property. These are but examples of expressions, sufficiently strong to secure the property to the wife, independent of the husband; and wherever words shall be used, equally expressive in the judgment of the Court, they must be deemed sufficient. In the deed we are considering, the words are “for the entire use, benefit, profit and advantage of Mrs. Eleanor Kincaid.” The word “entire” governs the conveyance, and gives its meaning and force to each of the' other words, and is the same as if written “'entire use,” “entire benefit,” “entire profit,” “entire advantage.” The best lexicographers define entire to be, whole, undivided,
 
 not participated in with others.
 
 If this be the proper meaning of “entire,” as it certainly is, then it is evident, that it was not the' intention of the deed, that the husband should have any interest in the negroes whatever; for they are conveyed to Ashbell Smith for the use, benefit, profit and advantage of Mrs. Kincaid, to be enjoyed by her, without any participation with any other person — a mode of expression equally strong with “sole use,” “sole and separate use,” and equally indicative of the sam# idea, that she was to enjoy the property free from any interference on the part of her husband. We conclude, therefore, that the deed from Hall to Smith conveyed the negroes to the latter, for the sole and separate use of Mrs. Kincaid, during her life, and therefore no interest vested in her husband,
 

 William Kincaid.
 

 The bill must be dismissed as to Mrs. Kincaid, with costs.
 

 As to the remainder, after the life of Mrs. Kincaid, the bill must likewise be dismissed with costs ; because the trust in remainder, to the two daughters, as to two of the slaves, is certainly good, and the trust to sell the residue of the slaves and divide the proceeds among the heirs of Mrs. Kincaid, vests the right to those proceeds in. her children or issue, as purchasers.
 

 
 *422
 
 My brethren instruct me to say, their opinion is founded on the whole sentence, taken together.
 

 Per Curiam, Bill dismissed with costs.