The bill states that Solomon Marsh, the father of the complainant, gave by deed certain negroes to the plaintiff and her children, which is in the following words: "Know all men by these presents, that I, Solomon Marsh, for and in consideration of the natural love and good will which I have and bear towards my daughter, Eunice Ashcraft, have given and granted, and by these presents do freely give and grant unto the said Eunice Ashcraft and her children, a negro girl ten years old, *Page 184 
by the name of Clarissa, and her increase; but the said gift to extend to no other person." At the time this gift was made, Eunice was the wife of James Ashcraft and had two children who were boys, both of whom are since dead. James Ashcraft, the husband, being largely indebted, judgments were had against him and under the executions issuing thereon, the negro Clarissa and her children were by the sheriff levied on and sold as the property of the defendant Ashcraft, and the defendant Little became the purchaser. The bill claims, that under the deed of Solomon Marsh, the plaintiff, who is the Eunice Ashcraft mentioned in the deed, was entitled to the sole use and benefit of one-third of the negro Clarissa and her children, or to one-third of their value, and prays that they either may be divided and one-third allotted to her or to some person for her sole use, or sold, and one-third of the value so allotted; and that the defendant Little may be decreed to account with her for one-third of the hires of said negroes since they have been in his possession.
The defendants have filed a demurrer, and assigned for reason, that it appears, by the plaintiff's own showing, that she has not any separate estate in the negroes mentioned in the bill. Upon argument, the demurrer was sustained and the bill dismissed with costs.
We concur with his Honor, in his opinion. The plaintiff contends, that, under the expression used in the deed, "but the said gift to extend to no other person," she has in one-third part of the negroes a sole property, separate and distinct from her husband, and over which he has no control, and which is not subject to his debts or encumbrances. Do these words, taken in connection with those which immediately precede them, give her such property? It is admitted, that no technical words or particular from of expression is required, to convey to a married woman property to the exclusion of her husband, but that any words are sufficient, which leave no doubt that such was the intention of the devisor or settlor. It is the intention of the donor, which is to govern, but this intention of excluding the husband must not be left to inference, but must be clearly and unequivocally declared. If the intention be clear, the Court will execute it, though it may not be expressed in technical language. Lewin on Trusts, p. 150, and the authorities there referred to. The governing principle *Page 185 
is, that the husband is not to be deprived of what the law gives him by the jus mariti, by inference. In the case of Heathmanv. Hall, 38 N.C. 420, this doctrine is fully recognized. The words, "for the entire use and benefit, profit and advantage of Mrs. Eleanor Kincaid," being equivalent to for the sole use, etc. Words which were held to be sufficiently explicit, in the case of Adamson v. Armitage, 19 Ves. Jr., 416, also reported in Cooper, 283, and also in the case, Ex parte Ray, 1 Mod., 199, and Lynes's case, 1 Younge, 562. So also the case of Rudisellv. Watson, 17 N.C. 430, expressly and strongly enforces the same doctrine. "It will not do (the Court say,) to guess. The husband can not be excluded without plain recorded words or a necessary implication." These cases abundantly show, that, to exclude the husband, the intention of the settlor must be clear, certain, and unequivocally declared. This (239) certainly, it is said, exists in this case by force of the clause, "but the said gift to extend to no other person." Taken by themselves, they might have that effect; but coupled, as they are with others preceding them, we do not think so. Our attention has been drawn to the case, Margetts v. Barringer, 10 Cond. Ch., 158, 7th Simons, 482. The condensed report is very concise. The case is as follows: John Eustace devised to Louise Margetts, and Ann Margetts, all the residue of his property to be equally divided between them, for their own use and benefit, independent of any other person. The Vice Chancellor, Sir Launcelot Shadwell, decided, that the words, "independent of any other person," meant "independent of all mankind," and of course included the husband. In the previous case of Wagstaff v. Smith, 9 Ves. Jr., 520, it had been declared by the Master of the Rolls, Sir William Grant, that a devise to a trustee to suffer a married woman to take to her own use, etc., "independent of her husband," the interest of certain stock, was a devise to her separate use. For such expressions are clearly inconsistent with the idea of any interference on the part of the husband. The only question, which appears to have been brought to the attention of the Court in Margett's case was, whether the husband was included in the words "independent of any other person," by force of the words themselves, and the vice-chancellor so declared. The words "for their own use and benefit" are not noticed, because, if the husband was included in the words of exclusion, then it was admitted, she had the property to her sole and separate use. There was nothing in the devise, in that case, inconsistent with such an intention on the part of the settlor, and indeed his obscure purpose could not be carried out under any other construction. *Page 186 
The husband therefore was excluded by a necessary implication. Is there any such necessary implication in this case? (240) The words are, "but the said gift is not to extend to any other person." These words extend to the whole gift, as well to the children as to the mother. These children being sons, the words, as to them, could not have been used, to create an estate to their separate use, but for some other purpose; as to show the intention, that, upon the death of one of them, the other should take and not some other person. But whether this last was the intention or not, it is clear they could not create estate in them, and therefore we can not say that the same words, connected as they are with others, create a separate estate in the mother. But in the case of Margetts, the gift was to a mother and her daughter; the purpose thereof was consistent and applied to both. Here the children of Eunice Ashcraft were boys, and to put upon the words, as to them, the construction that is urged on the part of the mother, would be absurd. This view of the case is sustained by the case of Wardel v. Claxton, 16 E. Cond., Ch. 324. The testator bequeathed his residuary estate to trustees, to invest, etc, and to pay the interest and dividends thereof to his wife, for her life, to be by her applied for the maintenance of herself and children, etc. The question was, whether the widow, who had married again, was entitled to the income of the property to her separate use. The vice-chancellor observed, "I do not think that this is a gift to the separate use of this lady. In all the cases that have been cited the sole object of the bounty was the woman, etc. But in this case, the words to be by her applied, have reference not only to the testator's widow, but to all the children." The chancellor admits, if the words applied only to the widow, she would have had a separate estate. Such might have been, in the case before us, the intention of the donor. "It is possible," as the Court say in Rudisell v. Watson,17 N.C. 430, "nay, very probable, that the donor did intend that his daughter should have the sole separate use of her share of the negroes." We are inclined to think he did so (241) intend; but we can not say he did, for we are not sure of it. But it will not do to guess. The donor might further have supposed, that, without the use of those words, the gift to the children of Eunice might embrace all the children she might thereafter have. The question is not, whether he was expert in the law, whether he was right or wrong in that supposition, if he did entertain it, but what was his intention in using the expressions. As before stated, it is probable it was to give the property to the sole use of the wife; but a probable, *Page 187 
a possible intention, will not sustain the wife's claims. Hence, although the words might have the construction contended for, yet if they will have the other also, as being in the mind or intention of the donor, though he was wrong in his conclusion, the claim of the wife is repelled; not because the donor did not intend the sole and separate use to her, but because he has not used such language as to enable us to say he did so intend. See the case of Rudisell v. Watson, supra. The opinion pronounced by the Court in that case, it appears to me, governs and controls this. The husband can not be deprived of his marital rights by conjecture, however strong. There must be a certainty, to that degree which shows that the donor must have so meant, and could not have meant otherwise. If such was the intention here of the donor, from the words he has used, we can not declare it so to have been. By the gift of Solomon Marsh, one-third of the negro Clarissa and her future increase vested absolutely in James Ashcraft, the husband, by virtue of "the jus mariti," and the other two-thirds in his children then born of his wife Eunice. Upon their death, their interested passed to him, and the whole title vested in him, and was liable to the payment of his debts.
The decree of the Court below must be affirmed, the demurrer sustained, and the bill dismissed with costs.